Docket No. 12-56523

# United States Court Of Appeals
# For The Ninth Circuit

## OLASUMBO T. AJETUNMOBI

*Plaintiff and Appellant,*

vs.

## COUNTRYWIDE HOME LOANS INC. ET AL.

*Defendants and Appellees.*

*Appeal from a Judgment of Dismissal of*
*United States District Court for the Central District of California,*
*Case No. 12-0568 DOC (JPRx) • Hon . David O. Carter*

# Appellees' Brief

Jan T. Chilton (State Bar No. 47582)
Erik Kemp (State Bar No. 246196)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants and Appellees
Countrywide Home Loans, Inc.; Bank of
America, N.A.; BAC Home Loans Servicing,
LP; Mortgage Electronic Registration
Systems, Inc., Recontrust Company, N.A., and
Wells Fargo Bank, N.A.

# CORPORATE DISCLOSURE STATEMENT
[Fed. R. App. 26.1]

Pursuant to Fed. R. App. P. 26.1, defendants and appellees state:

1.      Bank of America Corporation directly or indirectly owns 10% or more of Countrywide Home Loans, Inc., Bank of America, N.A., and Recontrust Company, N.A.  Bank of America, N.A. is the successor by merger to BAC Home Loans Servicing, LP.

2.      MERSCORP Holdings, Inc. directly or indirectly owns 10% or more of Mortgage Electronic Registration Systems, Inc.

3.      Wells Fargo & Company directly or indirectly owns 10% or more of Wells Fargo Bank, N.A.

# TABLE OF CONTENTS

Page

I.      JURISDICTIONAL STATEMENT ................................................................1

II.     ISSUE PRESENTED ..................................................................................1

III.    STATEMENT OF THE CASE .......................................................................1

IV.     STATEMENT OF FACTS ...........................................................................2

V.      SUMMARY OF ARGUMENT ......................................................................4

VI.     STANDARD OF REVIEW ..........................................................................6

VII.    AJETUNMOBI'S THEORY HAS NO BASIS UNDER
        CALIFORNIA LAW ..................................................................................7

        A.    A Recorded Assignment Is Not Necessary to Assign a
              Loan or Commence Nonjudicial Foreclosure .......................................7

        B.    The Assignment of the Deed of Trust Did Not Convey
              the Debt to BofA ..............................................................................10

        C.    Ajetunmobi's Lawsuit Is An Impermissible
              Preemptive Action ...........................................................................12

VIII.   AJETUNMOBI ALLEGED NO CLAIM FOR RELIEF ............................14

        A.    The Fraud Claims Were Correctly Dismissed .....................................14

              1.    Ajetunmobi Alleged No Fraudulent Act or Omission..............15

              2.    Ajetunmobi Did Not Allege Reliance or Damages .................16

        B.    The Unfair Competition Law Claim Was Correctly Dismissed .........18

              1.    Ajetunmobi Alleged No Unlawful, Unfair or Deceptive
                    Conduct ..................................................................................18

              2.    Ajetunmobi Failed to Allege UCL Standing ..........................20

        C.    The TILA Claim Was Correctly Dismissed.......................................21

1.    The TILA Claim Against Countrywide Is Time-Barred ..........21

2.    BofA and MERS Are Not Subject to TILA Disclosure
      Requirements ...........................................................22

D.    Ajetunmobi Has Waived Any Error in the Dismissal of Wells
      Fargo or Her Equitable Claims...........................................24

IX.   CONCLUSION ................................................................25

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Alperin v. Vatican Bank*,
  410 F.3d 532 (9th Cir. 2005) ..........................................................7

*Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal.4th 503 (1994) ...................................................................15

*Bank of the West v. Superior Court*,
  2 Cal.4th 1254 (1992) .................................................................19

*Branch v. Tunnell*,
  14 F.3d 449 (9th Cir. 1994) ..........................................................7

*Byrd v. Maricopa County Sheriff's Dept.*,
  629 F.3d 1135 (9th Cir. 2011) ......................................................6

*Caballero v. Bank of Am.*,
  468 F. App'x 709 (9th Cir. 2012)...................................................8

*Cadlo v. Owens-Illinois, Inc.*,
  125 Cal.App.4th 513 (2004) ........................................................16

*Californians for Disability Rights v. Mervyn's, LLC*,
  39 Cal.4th 223 (2006) .................................................................20

*Calvo v. HSBC Bank USA, N.A.*,
  199 Cal.App.4th 118 (2011) ..............................................8, 10, 13

*Cervantes v. Countrywide Home Loans*,
  656 F.3d 1034 (9th Cir. 2011) ........................................10, 17, 21

*Chaset v. Fleer/Skybox Int'l, LP*,
  300 F.3d 1083 (9th Cir. 2002) ......................................................7

*Che v. Aurora Loan Servs., LLC*,
  847 F. Supp. 2d 1205 (C.D. Cal. 2012) ........................................24

*United States ex rel. Chunie v. Ringrose*,
  788 F.2d 638 (9th Cir. 1986) ........................................................7

*Cockerell v. Title Insurance & Trust Co.*,
   42 Cal.2d 284 (1954) ...................................................................................8, 10

*Collins v. City of San Diego*,
   841 F.2d 337 (9th Cir. 1988) ...............................................................25

*Cousins v. Lockyer*,
   568 F.3d 1063 (9th Cir. 2009) .............................................................25

*Davis v. Ford Motor Credit Co.*,
   179 Cal.App.4th 581 (2009) .................................................................19

*Debrunner v. Deutsche Bank Nat. Trust Co.*,
   204 Cal.App.4th 433 (2012) .................................................................13

*FDIC v. Garner*,
   126 F.3d 1138 (9th Cir. 1997) .............................................................22

*Fontenot v. Wells Fargo Bank, N.A.*,
   198 Cal.App.4th 256 (2011) .........................................................*passim*

*Freeman v. Time Inc.*,
   68 F.3d 285 (9th Cir. 1995) .................................................................20

*Gale v. First Franklin Loan Servs.*,
   701 F.3d 1240 (9th Cir. 2012) .............................................................24

*Gardner v. Martino*,
   563 F.3d 981 (9th Cir. 2009) .................................................................7

*Gomes v. Countrywide Home Loans*,
   192 Cal.App.4th 1149 (2011) ...............................................................13

*Hall v. Time Inc.*,
   158 Cal.App.4th 847 (2008) .................................................................20

*Harvick v. Am. Home Mortgage Servicing, Inc.*,
   2013 WL 3283523 (E.D. Cal. June 27, 2013) ...................................24

*Haynes v. EMC Mortgage Corp.*,
   205 Cal.App.4th 329 (2012) ...................................................................8

*Herrera v. Federal Nat. Mortg. Assn.*,
   205 Cal.App.4th 1495 (2012) ...................................................................8, 13, 17

*Hillis v. Heineman*,
   626 F.3d 1014 (9th Cir. 2010) ...........................................................................25

*Jacobsen v. Aurora Loan Servs., LLC*,
   2012 WL 3257665 (N.D. Cal. Aug. 8, 2012) ....................................................24

*Jenkins v. JP Morgan Chase Bank, N.A.*,
   216 Cal.App.4th 497 (2013) ......................................................................*passim*

*Kahle v. Gonzales*,
   487 F.3d 697 (9th Cir. 2007) ................................................................................6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) .....................................................................14, 19

*Kelley v. Upshaw*,
   39 Cal.2d 179 (1952) ..........................................................................................11

*King v. State of Cal.*,
   784 F.2d 910 (9th Cir. 1986) ..............................................................................21

*Knievel v. ESPN*,
   393 F.3d 1068 (9th Cir. 2005) ..............................................................................6

*Kunert v. Mission Financial Services Corp.*,
   110 Cal.App.4th 242 (2003) ...............................................................................19

*Kwikset Corp. v. Superior Court*,
   51 Cal.4th 310 (2011) .........................................................................................20

*Linear Technology Corp. v. Applied Materials, Inc.*,
   152 Cal.App.4th 115 (2007) ...............................................................................19

*Lavie v. Procter & Gamble Co.*,
   105 Cal.App.4th 496 (2003) ...............................................................................19

*Lazar v. Superior Court*,
   12 Cal.4th 631 (1996) .........................................................................................14

*Lozano v. AT & T Wireless Services, Inc.*,
    504 F.3d 718 (9th Cir. 2007) ...............................................................19

*Mirkin v. Wasserman*,
    5 Cal.4th 1082 (1993) ......................................................................16

*Nagy v. Nagy*,
    210 Cal.App.3d 1262 (1989) ............................................................16

*Orloff v. Metropolitan Trust Co.*,
    17 Cal.2d 484 (1941) ......................................................................16

*Outdoor Media Group, Inc. v. City of Beaumont*,
    506 F.3d 895 (9th Cir. 2007) ..............................................................7

*Panoutsopoulos v. Chambliss*,
    157 Cal.App.4th 297 (2007) .............................................................16

*Seattle School Dist., No. 1 v. B.S.*,
    82 F.3d 1493 (9th Cir. 1996) .............................................................22

*Seidell v. Tuxedo Land Co.*,
    216 Cal. 165 (1932) ..........................................................................8

*Shroyer v. New Cingular Wireless Services, Inc.*,
    622 F.3d 1035 (2010)........................................................................19

*In re Silicon Graphics Inc. Sec. Litig.*,
    183 F.3d 970 (9th Cir. 1999) ..............................................................7

*Siliga v. Mortg. Elec. Registration Sys., Inc.*,
    219 Cal.App.4th 75 (2013) .........................................................13, 20

*Stockwell v. Barnum*,
    7 Cal.App. 413 (1908) .......................................................................8

*Swartz v. KPMG, LLP*,
    476 F.3d 756 (9th Cir. 2007) .............................................................14

*U.S. v. Thornburg*
    82 F.3d 886 (9th Cir. 1986) ................................................................8

*In re Verifone Secs. Litig.,*
  11 F.3d 865 (9th Cir. 1993) ...................................................................7

*Vess v. Ciba-Geigy Corp. USA,*
  317 F.3d 1097 (9th Cir. 2003) ............................................................19

*Zirogiannis v. Dreambuilder Investments LLC,*
  782 F. Supp. 2d 14 (E.D.N.Y 2011) ...........................................24, 25

*Zucco Partners v. Digimarc Corp.,*
  552 F.3d 981 (9th Cir. 2009) ................................................................7

*Zumbrum v. Univ. of Southern Calif.*
  25 Cal.App.3d 1 (1972) .......................................................................16

STATUTES, RULES, REGULATIONS

United States Code
  Title 15
      § 1601 *et seq.*...............................................................................6
      § 1640..........................................................................................21
      § 1641....................................................................................23, 24

Business & Professions Code
      § 17200....................................................................................5, 18
      § 17204.........................................................................................20

Civil Code
      § 2936.............................................................................................8

Code of Federal Regulations
  Title 12
      § 226.2.........................................................................................21
      § 226.39.......................................................................................22
      § 1026.2.......................................................................................23
      § 1026.39................................................................................22-24

Federal Rules of Civil Procedure
      Rule 9 .....................................................................................14, 19
      Rule 12 ....................................................................................1, 6

**OTHER AUTHORITIES**

9th Circuit Rule 28-2.2 ................................................................................1

Restatement (Third) of Property (Mortgages) § 5.4, comment c (1997)................12

# I.

## JURISDICTIONAL STATEMENT

Defendants and appellees agree with plaintiff and appellant Olasumbo Ajetunmobi's statement of the matters required by 9th Circuit Rule 28-2.2.

# II.

## ISSUE PRESENTED

Did Ajetunmobi allege sufficient facts to state a plausible claim for relief arising out of her claim defendants misidentified the servicer and owner of her home loan following her default?

# III.

## STATEMENT OF THE CASE

Ajetunmobi filed this action in April 2012. *See* E.R. 18-42.

Defendants Countrywide Home Loans, Inc. ("Countrywide"), Bank of America, N.A., BAC Home Loans Servicing, LP[1] and Recontrust Company, N.A. ("Recontrust") moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* at 43-65. Ajetunmobi filed opposition. *Id.*, at 66-78. Defendants replied. *Id.*, at 79-89.

On July 17, 2012, the district order entered an order granting defendants' motion to dismiss with prejudice. *Id.* at 1-15. Ajetunmobi filed a notice of appeal

---

[1] Bank of the America, N.A. is the successor by merger to BAC Home Loans Servicing LP. Both defendants are collectively referred to as "BofA" below.

on August 10, 2012.  *Id.*, at 90.  However, the notice of appeal was premature as the case was still pending against Wells Fargo Bank, N.A..

Wells Fargo separately moved to dismiss the complaint.  *See* Dkt. no. 18. The district court granted that motion in September 2012.  *See* Dkt. no. 19.

Ajetunmobi later filed an amended complaint against Wells Fargo.  *See* Dkt. no. 21.  Wells Fargo moved to dismiss the amended complaint.  *See* Dkt. nos. 22, 23.  The district court entered an order granting the motion on March 5, 2013. E.R., at 17; *see also* Dkt. no. 32.[2]   A judgment dismissing the entire case with prejudice was entered on June 21, 2013.  E.R. at 16-17.

## IV.

## STATEMENT OF FACTS

In February 2007, Ajetunmobi financed the purchase of real property in Whittier, obtaining a home loan from Clairon Mortgage.  The loan was secured by a deed of trust encumbering the property.  E.R. 21, 40-42 ¶ 16.  The deed of trust "named [d]efendant MERS as a 'beneficiary under this Security Instrument,' [and] clearly stated that 'MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.'  *Id.*, 21-22, ¶ 17.

---

[2] Ajetunmobi was granted leave to amend as to the TILA claims.  *See* Dkt. no. 31. However, Ajetumobi did not timely file an amended complaint, and the district court denied her ex parte application for an extension of time.  *See* Dkt. no. 35. Ajetunmobi has not challenged this ruling on appeal.

The deed of trust also provides that "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower." *See* Supp. E.R. 17, ¶ 20; 85 ¶ 20.

Shortly after origination, the loan was sold to Countrywide and pooled with other loans in a securitized trust. E.R., 22, 72, 74 ¶¶ 18, 19. BofA later acquired servicing rights in the loan. *See id.*, 22-23, ¶¶ 23-25; *see also* Supp. E.R. 97-103.

In September 2009, BofA began contacting Ajetunmobi about her unpaid debt, stating that it was "acting 'on behalf of the holder' of Plaintiff's Note…' " E.R. 22-23, ¶¶ 24, 23, 25. In January 2011, BofA sent Ajetunmobi a notice stating the arrears on the loan totaled $70,0327.39 and that it would accelerate the debt if she did not cure her default. E.R., 23, ¶ 25; *see also* Supp. E.R. 102-103.

Ajetunmobi requested that BofA provide "documents evidencing its interest in the loan and name of the Noteholder on whose behalf it claimed to be acting." E.R., 23, ¶ 26. BofA advised Ajetunmobi that Wells Fargo was the owner of her loan. E.R., 24, ¶¶ 29-30; Supp. E.R. 123, 124.

In October 2011, MERS recorded an assignment of the deed trust in favor of BofA. E.R., 25, ¶ 32. BofA thereafter recorded a substitution of trustee, naming ReconTrust as the trustee under the deed of trust. *Id.*, 25, ¶ 33. Foreclosure proceedings commenced. *Id.*, ¶¶ 30-33.

Yet, the sale did not go forward and Ajetunmobi remains in the property today.  According to Ajetunmobi, the October 2011 assignment of deed of trust shows that BofA's prior representations that it was only the loan servicer were false.[3]  *Id.*, 25-26, ¶¶ 35-37.

# V.

## SUMMARY OF ARGUMENT

The district court correctly dismissed this frivolous action with prejudice.

After defaulting on her home loan, Ajetunmobi filed this dilatory lawsuit, contending her loan servicer, BofA, misidentified Wells Fargo as the owner of her loan.  According to Ajetunmobi, Wells Fargo could not have owned her loan because there was no publicly recorded assignment in its favor, but instead only a later assignment of the deed of trust to BofA.

Ajetunmobi mistakes the purpose and effect of recorded assignments.  Under California law, an assignment of a deed of trust is neither necessary nor sufficient to assign a loan.  The security interest in a loan follows the note, and so is assigned automatically whenever there is a transfer of note ownership.  Ajetunmobi did not and cannot allege there was any defect in the transfer of her note.  Accordingly, the

---

[3] After this appeal was filed, the servicing rights to Ajetunmobi's loan were transferred to Nationstar Mortgage, LLC.  Accordingly, BofA no longer has any interest in Ajetunmobi's loan.

purported omission of certain assignments from the public record stated no claim for relief. *Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272 (2011).

Nor is Ajetunmobi correct that the later assignment of deed of trust to BofA conveyed to it her debt or rendered false its prior representation that it only serviced the loan. The assignment was recorded solely for administrative convenience. It did not affect ownership of the loan absent an assignment of the underlying debt. Ajetunmobi alleged no such assignment.

The entire lawsuit was also correctly dismissed as an improper "preemptive" action designed to thwart or delay foreclosure. Ajetunmobi alleged no actual defect in the assignment of her loan or foreclosure proceedings, but instead improperly sought to require defendants to prove in court they were authorized to foreclose nonjudicially.

Each of Ajetunmobi's individual claims was correctly dismissed. Ajetunmobi's three fraud claims were correctly dismissed as Ajetunmobi alleged no actionable misrepresentation or omission. The fraud claims also failed for want of allegations of reliance or damages. Ajetunmobi was threatened with foreclosure because she defaulted on her loan, not because BofA told her it was the servicer or allegedly misidentified the loan's owner.

Ajetunmobi's claim for violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code, § 17200 *et seq.,* was derivative of the fraud claims and

correctly dismissed for that reason. The UCL claim also failed as Ajetunmobi did not allege UCL standing.

Ajetunmobi concedes her claim for violation of the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* against Countrywide is time-barred on its face. Her TILA claim against BofA and MERS failed as she did not allege either was ever assigned her debt or obliged to provide the disclosure she says was missing.

Finally, Ajetunmobi has waived any error in the dismissal of Wells Fargo or of her equitable claims for relief. The opening brief does not discuss the equitable claims or Wells Fargo's dismissal, which was entered after a separate order granting Wells Fargo's motion to dismiss Ajetunmobi's amended complaint.

For these reasons, the judgment of dismissal should be affirmed.

## VI.

## STANDARD OF REVIEW

This Court reviews a dismissal under Fed. R. Civ. P. 12(b)(6) de novo. *Kahle v. Gonzales*, 487 F.3d 697, 699 (9th Cir. 2007); *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). This Court "may affirm the dismissal for any reason supported by the record." *Byrd v. Maricopa County Sheriff's Dept.*, 629 F.3d 1135, 1139 (9th Cir. 2011).

In its de novo review, the Court assumes the truth of facts (but not conclusions of law) properly pleaded in the complaint,[4] as well as of facts which may be judicially noticed[5] or which appear from documents "whose contents are alleged in a complaint and whose authenticity no party questions."[6]

Denial of leave to amend is reviewed for abuse of discretion. A district court does not abuse its discretion in denying leave to amend where granting leave would be futile. *Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009); *Chaset v. Fleer/Skybox Int'l, LP*, 300 F.3d 1083, 1088 (9th Cir. 2002).

## VII.

## AJETUNMOBI'S THEORY HAS NO BASIS UNDER CALIFORNIA LAW

### A.    A Recorded Assignment Is Not Necessary to Assign a Loan or Commence Nonjudicial Foreclosure

The gist of most of Ajetunmobi's claims is that BofA misrepresented that Wells Fargo was the owner of her loan in 2011 because an assignment of the deed of trust was recorded in BofA's favor several months later. E.R. 27, ¶¶ 40-42, 47-48, 51-54.

---

[4]    *Alperin v. Vatican Bank*, 410 F.3d 532, 541 (9th Cir. 2005); *In re Verifone Secs. Litig.*, 11 F.3d 865, 868 (9th Cir. 1993); *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n. 2 (9th Cir. 1986).

[5]    *Zucco Partners v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009); *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir. 2007).

[6]    *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999); *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).

Ajetunmobi misinterprets the purpose and effect of recorded assignments. The assignment of a deed of trust is neither necessary nor sufficient to assign the underlying debt. Rather, an assignment of the debt carries with it the beneficial interest in the deed of trust securing the debt.[7] Once the note is assigned, "no further assignment of the deed of trust [is] necessary …" to perfect the assignment, in general (*see Cockerell* 42 Cal.2d at 291), or to foreclose on a deed of trust, in particular.[8]

Hence, it was not necessary to execute or record an assignment of deed of trust to assign Ajetunmobi's loan to Wells Fargo or anyone else. Ownership of the loan transferred when the note was transferred. The security followed the note. Ajetunmobi did not allege any defect in the transfer of her note. So, Ajetunmobi did not and could not allege any claim based on the absence of an assignment in the public record.

> Plaintiff rests her argument on the documents in the public record, but assignments of debt, as opposed to assignments of the security interest incident to the debt, are commonly not recorded. The lender could readily

---

[7] Cal. Civ. Code, § 2936; *Cockerell v. Title Insurance & Trust Co*., 42 Cal.2d 284, 291 (1954); *Seidell v. Tuxedo Land Co.*, 216 Cal. 165, 170 (1932); *U.S. v. Thornburg* 82 F.3d 886, 892 (9th Cir. 1986) (applying California law).

[8] *See, e.g., Caballero v. Bank of Am*., 468 F. App'x 709, 710 (9th Cir. 2012); *Herrera v. Federal Nat. Mortg. Assn.,* 205 Cal.App.4th 1495, 1509-1510 (2012); *Haynes v. EMC Mortgage Corp*., 205 Cal.App.4th 329, 333-37 (2012); *Calvo v. HSBC Bank USA, N.A*., 199 Cal.App.4th 118, 121-25 (2011); *Stockwell v. Barnum*, 7 Cal.App. 413, 416 (1908).

> have assigned the promissory note to HSBC in an unrecorded document that was not disclosed to plaintiff. To state a claim, plaintiff was required to allege not only that the purported MERS assignment was invalid, but also that HSBC did not receive an assignment of the debt in any other manner.  There is no such allegation.

*Fontenot*, 198 Cal.App.4th at 272.

Contrary to Ajetunmobi's unsupported argument (*see* A.O.B. 7-8), *Fontenot* is not factually distinguishable because the deed of trust there warned the plaintiff her note could be sold one or more times without notice.  *See Fontenot*, 198 Cal. App.4th at 272 & n. 11.  Ajetunmobi's deed of trust contains the exact same provision:  "[t]he Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower."  *See* Supp. E.R. 17, ¶ 20; 85 ¶ 20.  The only thing "missing" here is a complete copy of Ajetunmobi's deed of trust (*see* A.O.B. 1-2, 7-8), which Ajetunmobi failed to include in the record on appeal.[9]  *See id.*

As her promissory note is a negotiable instrument, Ajetunmobi should have "anticipate[d] it can and might be transferred to another creditor."  The deed of trust expressly disclosed this possibility.  *See Fontenot*, 198 Cal.App.4th at 272.

---

[9] Ajetunmobi's complete deed of trust was attached as an exhibit to both her complaint and defendants' request for judicial notice submitted in support of their motion to dismiss.  *See* Supp. E.R. 6-27, 74-95.  On appeal, however, Ajetunmobi has submitted only a portion of the deed of trust attached to her complaint (*see* E.R. , 39-42), omitting the page with the key provision just quoted, and failed to include any portion of defendants' request for judicial notice at all.

As Ajetunmobi's attempt to distinguish *Fontenot* was baseless (*see* A.O.B. 7-8), the district court thus did not abuse its discretion in dismissing Ajeunmobi's claims with prejudice.[10]

Finally, Ajetunmobi's related claim that MERS lacked authority to convey the assignment of deed of trust to BofA also lacks merit. E.R. 29, ¶ 52; A.O.B. 4. Because no assignment of deed of trust need be recorded all, there was no need for MERS to convey any intervening assignment to Wells Fargo or anyone else before conveying the deed of trust to BofA. MERS is authorized by the deed of trust to act on behalf of the lender or its assigns. *See* Supp. E.R. 7-8, 76,77. This Court and the California appellate courts have repeatedly rejected similar challenges to MERS's authority to act on the noteholder's behalf.[11] Ajetunmobi alleged no facts and advanced no argument that would warrant a different result here.

**B.    The Assignment of the Deed of Trust Did Not Convey the Debt to BofA**

Ajetunmobi also mistakes the effect of the October 2011 assignment of the deed of trust to BofA. Because the security follows the note (*see Cockerell,*

---

[10] Ajetunmobi wrongly faults the district court for "assuming that Defendants could have recorded Wells Fargo's interest without Plaintiff's knowledge …" *See* A.O.B. 5. What the district court actually held was that the note could have been assigned in an "*unrecorded* document that was not disclosed to plaintiff." E.R. 8 (*citing Fontenot*, 198 Cal.App.4th at 272) (emphasis added). Ajetunmobi fails to counter or distinguish that aspect of *Fontenot* for the reasons discussed above.

[11] *See, e.g., Cervantes v. Countrywide Home Loans,* 656 F.3d 1034, 1041-45 (9th Cir. 2011) (applying Arizona law); *Fontenot*, 198 Cal.App.4th at 272; *Calvo*, 199 Cal.App.4th at 125.

42 Cal.2d at 291), the assignment of deed of trust did not and could not in itself assign Ajetunmobi's debt to BofA. *See Kelley v. Upshaw*, 39 Cal.2d 179, 192 (1952).

Nor was it intended to do so. Assignments of deeds of trust to servicers like BofA are often recorded for administrative convenience because they facilitate the servicer acting on behalf of the noteholder in executing and recording documents in the public record. Such assignments do not change ownership of the loan, however, which remains with the noteholder.

> Institutional purchasers of loans in the secondary mortgage market often designate a third party, not the originating mortgagee, to collect payments on and otherwise "service" the loan for the investor. *In such cases the promissory note is typically transferred to the purchaser, but an assignment of the mortgage from the originating mortgagee to the servicer may be executed and recorded. This assignment is convenient because it facilitates actions that the servicer might take, such as releasing the mortgage, at the instruction of the purchaser. The servicer may or may not execute a further unrecorded assignment of the mortgage to the purchaser. It is clear in this situation that the owner of both the note and mortgage is the investor and not the servicer.* This follows from the express agreement to this effect that exists among the parties involved. *The same result would be reached if the note and mortgage were originally transferred to the institutional purchaser, who thereafter designated another party as servicer and executed and recorded a mortgage assignment to that party for convenience while retaining the promissory note.* Again, the parties' agreement that ownership of the note should remain in the purchaser would be enforced.

Restatement (Third) of Property (Mortgages) § 5.4, comment c (1997).

Here, Ajetunmobi never alleged the note was assigned to BofA. So, the mere assignment of the deed of trust did not transfer ownership of the loan, but instead reflected and was consistent with BofA's agreement to service the loan on the noteholder's behalf. As the assignment of the deed of trust is the sole basis of Ajetunmobi's theory that BofA was not a mere servicer, her claim that BofA misrepresented its role as servicer lacks merit.

## C.     Ajetunmobi's Lawsuit Is An Impermissible Preemptive Action

Ajetunmobi's case was also correctly dismissed because it is an improper preemptive action that sought to require defendants to prove in court their right to foreclose nonjudicially.

Contrary to Ajetunmobi's assertion (*see* A.O.B. 4), California law does not require defendants, before foreclosing, to provide an "explanation" as to how and when the loan was assigned. "California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure." *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal.App.4th 497, 511-512 (2013) (citing cases). "[A]n action is 'preemptive' if the plaintiff alleges no 'specific factual [basis]' for

the claim that the foreclosure was not initiated by the correct person." *Siliga v. Mortg. Elec. Registration Sys., Inc*., 219 Cal.App.4th 75, 82 (2013).

Such preemptive actions are impermissible because they "seek[] to create 'the additional requirement' that the foreclosing entity must 'demonstrate in court that it is authorized to initiate a foreclosure' before the foreclosure can proceed." *Jenkins,* 216 Cal.App.4th 512 (citations omitted). As the California Court of Appeal explained in *Gomes v. Countrywide Home Loans*, 192 Cal.App.4th 1149, 1156 (2011), "nowhere does the [nonjudicial foreclosure] statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action."[12]

Ajetunmobi's action is an improper "preemptive case." She does not dispute that she defaulted on her loan, but instead seeks to require BofA to " 'demonstrate in court that it is authorized to initiate a foreclosure' before the foreclosure can proceed." *Jenkins*, 216 Cal.App.4th at 512. She alleged no "specific factual basis" that would show any defect in the assignment of her loan or commencement of foreclosure proceedings. *Siliga*, 219 Cal.App.4th at 82. Ajetunmobi's complaint was properly dismissed for that additional reason.

---

[12] *Id.*; *accord: Siliga*, 219 Cal.App.4th at 82-84; *Debrunner v. Deutsche Bank Nat. Trust Co*., 204 Cal.App.4th 433, 441 (2012); *Herrera v. Federal Nat'l Mortg. Ass'n*, 205 Cal.App.4th 1495, 1505-06 (2012).

## VIII.

## AJETUNMOBI ALLEGED NO CLAIM FOR RELIEF

### A.    The Fraud Claims Were Correctly Dismissed

Ajetunmobi attempted to allege separate counts for fraudulent misrepresent-ation, fraudulent concealment, and civil conspiracy to defraud.  *See* E.R. 26-29, ¶¶ 38-57.

" 'The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' "  *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996).  Ajetunmobi failed to allege these elements with the particularity required by Fed. R. Civ. P. 9(b).[13]

---

[13] "Rule 9(b) demands that, when averments of fraud are made, the circum-stances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations and quotation omitted).  Also, Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant ... and inform each defendant separately of the allegations surrounding his alleged participation in the fraud."  *Swartz v. KPMG, LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quotations omitted).

### 1.    Ajetunmobi Alleged No Fraudulent Act or Omission

Each of Ajetunmobi's three counts for fraud alleges that BofA misrepresented that Wells Fargo was the owner of her loan in July 2011.  E.R. 27, ¶¶ 40-42, 47-48, 51-54.

The district court correctly held these allegations state no claim for relief under California law, let alone one for fraud.  *Id.* 7-10.  As shown above, no assignment of the deed of trust need have been recorded to assign Ajetunmobi's loan to Wells Fargo or anyone else.  Nor did the later assignment of the deed of trust to BofA convey Ajetunmobi's loan to BofA.

Even if it did, BofA's alleged acquisition of the loan in October 2011, when the assignment was recorded, would not render its July 2011 representation that it was only a loan servicer false.  Ajetunmobi did not allege BofA promised never to acquire ownership of her loan after July 2011.  *See* E.R. 8.

As Ajetunmobi alleged no actionable misrepresentation against BofA, she also alleged no conspiracy to defraud against MERS.  *See* E.R. 10.  "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design."  *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 510-511 (1994).  Because Ajetunmobi alleged no claim

for fraud or any other tort against BofA, there is no basis to hold MERS liable for allegedly conspiring to commit any tort.[14]

### 2.    Ajetunmobi Did Not Allege Reliance or Damages

"[T]o state a viable [fraud] claim, it is not enough to claim a fraudulent act; the fraudulent act must have caused harm." *Panoutsopoulos v. Chambliss*, 157 Cal.App.4th 297, 308 (2007) (citations omitted). "Specific pleading is necessary to 'establish a completed causal relationship' between the alleged mis-representations and the harm claimed to have resulted therefrom." *Mirkin v. Wasserman*, 5 Cal.4th 1082, 1092 (1993). "[O]therwise[,] no cause of action is stated."[15]

Even had Ajetunmobi alleged an actionable misrepresentation, she failed to allege she relied on it and suffered damages as a result. Whether or not there was a defect in the assignment of her loan did not harm Ajetunmobi in any way.

As *Fontenot* explained in similar circumstances, assuming the assignment were defective, "the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note." *Fontenot*, 198 Cal.App.4th at 272. Since an assignment "merely substituted one

---

[14] *See, e.g., Orloff v. Metropolitan Trust Co.*, 17 Cal.2d 484, 488 (1941); *Zumbrum v. Univ. of Southern Calif.* 25 Cal.App.3d 1, 12 (1972).

[15] *Zumbrun*, 25 Cal.App.3d at 12; *Cadlo v. Owens-Illinois, Inc.*, 125 Cal.App.4th 513, 519 (2004); *Nagy v. Nagy*, 210 Cal.App.3d 1262, 1268-1269 (1989).

creditor for another, without changing [the plaintiff's] obligations under the note," the borrower was not harmed even were there any defect in the manner in which the loan was assigned. *Id.*; *accord: Jenkins*, 216 Cal.App.4th at 514-15; *Herrera*, 205 Cal.App.4th at 1507-08; *Cervantes*, 656 F.3d 1034, 1044-45.

The same is true here. If BofA were an impostor, the loan's "true" owner and servicer, not Ajetunmobi, would be the parties harmed by BofA's unauthorized collection of Ajetunmobi's debt. Ajetunmobi concedes she defaulted on the loan. She concedes BofA told her it was the loan servicer and repeatedly sent her correspondence regarding her severely delinquent loan. E.R., 23-24, ¶¶ 25-29; Supp. E.R. 97-103. Ajetunmobi does not even allege she made any post-default payments to BofA, let alone some other creditor or servicer seeking to collect or foreclose on the loan. Ajetunmobi thus suffered no harm as a result of BofA's alleged misrepresentation that it was the servicer of her loan.

Ajetunmobi fails to allege any other facts showing detrimental reliance or damages. Ajeunmobi's credit score did not decrease because BofA represented it was a loan servicer or Wells Fargo was the noteholder (*see id.* E.R., 27, ¶¶ 42, 48), but instead because she defaulted on her loan before the alleged misrepresentation was made. *Id.*, 23, ¶¶ 24, 25.

Nor would it have been reasonable for Ajetunmobi to wait for a notice of assignment to Wells Fargo before applying for a loan modification. *Id.*, 25-28 ¶¶

31, 32, 42, 48.  The notice identifying Wells Fargo as the "creditor" states that BofA would continue to service the loan.  *See* Supp. E.R. 123-124.  Ajetunmobi did not allege she was later informed the loan's servicing rights would be transferred to Wells Fargo.

BofA did in fact continue to service the loan and later initiated foreclosure proceedings on the noteholder's behalf.  *Id.*, 25, ¶¶ 30-32.  Nothing prevented Ajetunmobi from seeking a modification from BofA.  So, the alleged misidentification of the noteholder caused Ajetunmobi no harm.

**B.     The Unfair Competition Law Claim Was Correctly Dismissed**

Ajetunmobi also attempted to rehash the same allegations into a claim for violation of the UCL.  E.R., 30-32, ¶¶ 65-72.  The district court correctly held the UCL claim was derivative of the misrepresentation claims and suffered from the same defects.  E.R. 11.  The UCL claim also failed as Ajetunmobi did not allege facts that would satisfy the UCL's standing requirement.

**1.     Ajetunmobi Alleged No Unlawful, Unfair or Deceptive Conduct**

The UCL prohibits unlawful, unfair, and deceptive conduct.  Cal Bus. & Prof. Code, § 17200.  Ajetunmobi failed to allege with the requisite particularity a violation of any of the UCL's three prongs.[16]

---

[16]  As Ajeunmobi's UCL claim is based on the same conduct as the misrepresentation claims, it "sounds in fraud" and must be pled with particularity

Ajetunmobi alleged no "unlawful" practice since she did not allege defendants violated any other law.  A practice that does not violate some other law is not "unlawful" or a violation of that prong of the UCL.  *See, e.g., Davis v. Ford Motor Credit Co.*, 179 Cal.App.4th 581, 589-92 (2009); *Kunert v. Mission Financial Services Corp.*, 110 Cal.App.4th 242, 262-264 (2003).

Ajetunmobi also alleged no "unfair"[17] or "deceptive"[18] practices.  BoA committed no "unfair" practice in servicing Ajetunmobi's loan on the noteholder's behalf.  BofA's alleged statements were not "likely to deceive" under the UCL because they were not false and because no reasonable person would have relied on them to their detriment.  *See Lavie v. Procter & Gamble Co*., 105 Cal.App.4th 496, 504-507 (2003).   Ajetunmobi's conclusory allegations that defendants' conduct was otherwise "unfair" or "deceptive" are too vague to state a claim for relief.[19]

---

under Fed. R. Civ. P. 9(b).  *Kearns*, 567 F.3d at 1125-28; *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103-04 (9th Cir. 2003).

[17] To state a claim for unfair practices, a plaintiff must plead that the practice is "tethered to some legislatively declared policy or proof of some actual or threatened impact on competition" or that its utility and benefit are outweighed by its harm to the consumer.  *Lozano v. AT & T Wireless Services, Inc*., 504 F.3d 718, 735-36 (9th Cir. 2007) (citations omitted).

[18] To state a claim for deceptive practices, a plaintiff must plead facts showing that members of the public are likely to be deceived by the conduct.  *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1267 (1992).

[19] *See, e.g., Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1044 (2010); *Linear Technology Corp. v. Applied Materials, Inc*., 152 Cal.App.4th 115,

### 2.    Ajetunmobi Failed to Allege UCL Standing

Even had Ajetunmobi alleged a UCL violation, she failed to allege standing to pursue it.  A plaintiff only has standing under the UCL if she has (1) "suffered injury in fact" and (2) "has lost money or property as a result of" the unfair competition she challenges.  Cal. Bus. & Prof. Code, § 17204; *Californians for Disability Rights v. Mervyn's, LLC*, 39 Cal.4th 223, 227 (2006).  "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection" between the alleged statutory violation and the plaintiff's damage or economic injury."  *Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326 (2011) (*quoting Hall v. Time Inc.*, 158 Cal.App.4th 847, 855 (2008)).

Even assuming credit damage or Ajetunmobi's alleged inability to modify her loan constituted *loss* of money or property (see E.R., 31,¶ 70), Ajetunmobi failed to "to plead a causal link between her economic injury, the impending nonjudicial foreclosure of her home, and the [] unfair or unlawful acts allegedly committed by Defendants."  *See Jenkins*, 219 Cal.App.4th at 522-23.

Ajetunmobi suffered credit damage because she defaulted on her loan, not because BofA later told her it was a loan servicer or Wells Fargo owned her loan. Ajetunmobi does not allege she attempted to modify her loan with BofA but was rebuffed because BofA was only a servicer.  Servicers can and regularly do handle

134-35 (2007); *see also Freeman v. Time Inc.*, 68 F.3d 285, 290 (9th Cir. 1995) (dismissing deceptive business practices claim).

loan modification applications on behalf of their investors.  As Ajetunmobi did not allege she suffered any economic harm as a result of defendants' conduct, her UCL claim was correctly dismissed for this additional reason.

## C.   The TILA Claim Was Correctly Dismissed

Ajetunmobi also attempted to allege a violation of TILA, contending Clarion failed to provide a Truth in Lending Disclosure Statement at origination and that BofA and MERS failed to notify her of the transfer of her loan after origination. E.R., 22, 30, ¶¶ 21-22, 60-64.

### 1.   The TILA Claim Against Countrywide Is Time-Barred

An action for damages under TILA must be brought within one year from the alleged violation.  *See* 15 U.S.C. §1640(e); *King v. State of Cal.,* 784 F.2d 910, 913 (9th Cir. 1986).  "[T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction …."(*id.*), which occurs when "a consumer becomes contractually obligated on a credit transaction."   12 C.F.R. § 226.2(a)(13); *Cervantes*, 656 F.3d at 1045.

Ajetunmobi became contractually obligated on her loan in February 2007. E.R. 21, ¶ 16.  Yet, Ajetunmobi did not file suit until April 2012, more than five years later, and thus far too late under TILA's one-year statute of limitations.

Ajetunmobi "agrees that her complaint against Countrywide for violation of TILA was time-barred."  *See* A.O.B. 5.  Yet, Ajetunmobi argues that if she "can

succeed in asserting a claim for fraud against any of the Defendants, particularly Bank of America, then her claims for violation of above-mentioned statutes should succeed." *See id.* This bald assertion should be summarily rejected as Ajetunmobi provides no explanation or authority to support it. *See, e.g., FDIC v. Garner*, 126 F.3d 1138, 1145 (9th Cir. 1997); *Seattle School Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1502 (9th Cir. 1996).

Even were the argument not waived, the viability of one claim does not affect the application of the statute of limitations to another. As Ajetunmobi concedes her TILA claim against Countrywide was untimely, it was correctly dismissed regardless of whether or not her other claims were adequately pled.

### 2. BofA and MERS Are Not Subject to TILA Disclosure Requirements

Ajetunmobi also alleged BofA and MERS failed to "make certain disclosures to Plaintiff when her mortgage loan was transferred between the parties." E.R., 30, ¶¶ 60, 61. Though far from clear, Ajetunmobi apparently contends defendants are "covered persons" obliged to inform her of the assignment of her loan under 12 C.F.R. § 1026.39.[20] E.R., 30, ¶¶ 60, 61.

---

[20] Ajetunmobi's complaint refers to 12 C.F.R. § 226.39, which has since been renumbered as 12 C.F.R. § 1026.39

Ajetunmobi is wrong. Neither MERS nor BofA was a "covered person" subject to this requirement under TILA or Reg. Z. *See* 15 U.S.C. § 1641(g); 12 C.F.R. § 1026.39(b).

> A "covered person" means any person, as defined in § 1026.2(a)(22), that becomes the owner of an existing mortgage loan by acquiring legal title to the debt obligation, whether through a purchase, assignment or other transfer, and who acquires more than one mortgage loan in any twelve-month period. For purposes of this section, *a servicer of a mortgage loan shall not be treated as the owner of the obligation if the servicer holds title to the loan, or title is assigned to the servicer, solely for the administrative convenience of the servicer in servicing the obligation.*

12 C.F.R. § 1026.39(a)(1) (emphasis added).

As TILA and Reg. Z make clear, "the statutory obligation to notify the mortgage loan borrower is only applicable to creditors who are the new owners or assignees of a mortgage loan, and not the transferors of the mortgage loan…" *Jenkins*, 216 Cal.App.4th at 516-17 (*citing* 15 U.S.C. § 1641(g)).

Ajetunmobi does not allege MERS ever received assignment of the loan. So, it was not a "covered person" under Reg. Z.

Though BofA was Ajetunmobi's loan servicer, it is not a "covered person" either. As explained above, it received assignment of the deed of trust "solely for the administrative convenience … in servicing the obligation." 12 C.F.R. § 1026.39(a)(1). Ajetunmobi alleged no other facts showing BofA "acquired legal

title to the debt obligation." *Id.* Hence, BofA was not a "covered person"[21] or otherwise subject to TILA liability.[22]

Finally, the TILA claim was too vague as Ajetunmobi never definitively alleged when the loan was transferred, if at all, or to whom, if anyone. Instead, Ajetunmobi's theory appears to be that the loan was never properly assigned and no one can collect her unpaid debt. Ajetunmobi failed to state a plausible TILA violation for this additional reason. *See* E.R. 12-13; *Zirogiannis v. Dreambuilder Investments LLC*, 782 F. Supp. 2d 14, 17 (E.D.N.Y 2011) (dismissing similar TILA claim where plaintiff failed to "allege when any transfer took place.")

## D.   Ajetunmobi Has Waived Any Error in the Dismissal of Wells Fargo or Her Equitable Claims

Ajetunmobi has waived any error in the dismissal of her claims against Wells Fargo. Though Ajetunmobi filed an amended complaint against Wells Fargo that was later dismissed, Ajetunmobi's opening brief does not discuss the

---

[21] *See, e.g., Jacobsen v. Aurora Loan Servs., LLC*, C 12-0135 RS, 2012 WL 3257665, at *5 (N.D. Cal. Aug. 8, 2012) (servicer of loan had no duty to disclose under 15 U.S.C. § 1641(g); *Harvick v. Am. Home Mortgage Servicing, Inc*., 2:12-CV-03077-MCE, 2013 WL 3283523, at *3-4 (E.D. Cal. June 27, 2013); *Che v. Aurora Loan Servs., LLC*, 847 F. Supp. 2d 1205, 1209-10 (C.D. Cal. 2012).

[22] TILA generally does not impose liability on loan servicers who do not also own the loan obligation. *See* 15 U.S.C. § 1641(f)(1) ("A servicer of a consumer obligation arising from a consumer credit transaction shall not be treated as an assignee of such obligation for purposes of this section unless the servicer is or was the owner of the obligation."); *Gale v. First Franklin Loan Servs*., 701 F.3d 1240, 1246 (9th Cir. 2012) (holding servicer that did not own loan was not subject to notice requirement under 15 U.S.C. § 1641(f)(2)).

amended complaint, Wells Fargo's motion to dismiss, or the district court's order granting the motion.

Ajetunmobi has also waived any error in the dismissal of the equitable claims—"for cancellation of trust deed and quiet title" and "declaratory and injunctive relief"—that she attempted to allege below.  E.R. 32-35, ¶¶ 73-83.  The district court dismissed both claims as Ajetunmobi alleged no facts that would render the trust deed void or entitle her to rescind the loan.  *Id.*, 14-15.

Ajetunmobi's opening brief does not address these rulings or attempt to show how she alleged facts that, if true, would support her equitable claims or any claim against Wells Fargo.  Ajetunmobi has, therefore, waived any challenge to the district court's dismissal of such claims.[23]

## IX.

## CONCLUSION

For the reasons stated above, the judgment of dismissal should be affirmed.

---

[23] *See, e.g., Cousins v. Lockyer,* 568 F.3d 1063, 1070 n. 3 (9th Cir. 2009); *Collins v. City of San Diego*, 841 F.2d 337, 339 (9th Cir. 1988); *see also Hillis v. Heineman*, 626 F.3d 1014, 1019 n. 1 (9th Cir. 2010) (failure to address each of the district court's alternative holdings on appeal results in waiver).

DATED:  February 24, 2014        SEVERSON & WERSON
                                 A Professional Corporation


                                 By:    _/s/ Erik Kemp_____
                                             Erik Kemp

                                 Attorneys for Defendants and Appellees
                                 Countrywide Home Loans, Inc.; Bank of
                                 America, N.A.; BAC Home Loans Servicing,
                                 LP; Mortgage Electronic Registration Systems,
                                 Inc., Recontrust Company, N.A., and Wells
                                 Fargo Bank, N.A.

# STATEMENT OF RELATED CASES

Defendants-Appellees are unaware of any cases that are now pending or were pending in this Court which are related to this appeal.

Dated:  February 24, 2014


                                                    Erik Kemp

# CERTIFICATE OF COMPLIANCE
## With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements
[Fed. R. App. P. 32(a)(7)(B)]

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), because this brief contains 6,015 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Windows 2010, in Times New Roman, 14 point type.

Dated:  February 24, 2014

*/s/Erik Kemp*
Erik Kemp